UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60669-CIV-COHN/Snow

LUZ COSTAS,

       Plaintiff,

vs.

LINDA S. McMAHON, Commissioner
of Social Security,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This cause is before the Court on the plaintiff's complaint seeking judicial review of a final decision of the Social Security Administration denying the plaintiff's application for Supplemental Security Income (SSI) benefits. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, <u>et</u>. <u>seq</u>., and was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

**I. PROCEDURAL HISTORY**

       The plaintiff filed an application for SSI benefits on November 11, 2002, alleging disability since October 1, 1998, as a result of back pain. The application was denied initially and upon reconsideration. The plaintiff then requested a hearing which was held before Administrative Law Judge Suanne S. Strauss on May 25, 2005. The Administrative Law Judge found that the plaintiff was not disabled within the meaning of the Social Security Act. The

Appeals Council, after considering additional evidence, denied the plaintiff's request for review on March 17, 2006. The plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

## II. FACTS

The plaintiff was born in 1965 and has an eighth grade education. She has no past relevant work because she did not earn sufficient income in any year prior to her alleged disability onset date. She states that she is unable to work as the result of back pain following two surgeries.

The plaintiff's treating physician was Rafael O. Nunez, M.D., and her chiropractor was David Mote, D.C. On January 17, 2002, an MRI of the plaintiff's lumbar spine was performed at the request of Dr. Mote. The test revealed the presence of a posterior right paracentral disc extrusion at L5-S1, creating impingement on the thecal sac and posterior displacement of the right S1 nerve root. Also present were degenerative spondylosis and rotoscoliosis of the spine. Facet joint disease was prominent bilaterally at L-5-S1, as well as mild central spinal stenosis at the same location. Neural canal narrowing was present at L1-2, L2-3, L3-4, L4-5 and L5-S1. There was impingement on the L5 nerve roots within their neural canals bilaterally. The MRI also showed a healed vertebral endplate fracture of T11 and anterior wedge compression fracture of the T12 vertebral bodies, and mild subcutaneous edema in the posterior midline. (R:86)

On February 12, 2002, the plaintiff was examined by Reed Stone, M.D., a neurologist. The plaintiff told Dr. Stone that she had been involved in two automobile accidents, one on December 21, 2001, and another on January 20, 2002. She complained of pain in her hands and forearm, as well as back pain. Physical examination revealed moderate spasm in the plaintiff's neck and back. Straight leg raising was positive on the right to about 40 degrees. The plaintiff had a mild Tinel's sign at the right carpal tunnel with reduced right hand grip. There were no sensory abnormalities, Relfexes were 2+ and gait was antalgic. Dr. Reed recommended continued chiropractic treatment pending examination by an orthopedic surgeon. (R:87-8)

Another MRI of the plaintiff's lumbar spine performed on April 9, 2002, showed central and right paracentral disc herniation which impressed on the central aspect of the thecal sac. Mild central canal stenosis was evident, as well as broad-based bulging annulus at L4-5. (R:89-90)

On June 12, 2002, the plaintiff was examined by Charles S. Theofilos, M.D., an orthopedic surgeon. The plaintiff complained of low back pain and right lower extremity radiculopathy. Dr. Theofilos' examination revealed decreased sensory over the dorsal aspect of the plaintiff's right foot. Deep tendon reflexes were 1+ and symmetrical, with trace to absent right ankle jerk. Straight leg raising was positive on the right, about 30 degrees. There was moderate spasm in the lumbosacral junction

and increased pain with flexion and extension. The plaintiff walked with an antalgic gait. Dr. Theofilos' diagnosis was L5-S1 disk herniation with low back pain worse than leg pain. Dr. Theofilos recommended a posterior lumbar interbody fusion at L5-S1 and the plaintiff agreed to proceed. (R:110-11)

On July 22, 2002, Dr. Theofilos performed a posterior lumbar interbody fusion of L5-S1 with pedicle screw fixation. The plaintiff was discharged on July 25, 2002. At a follow up visit on August 21, 2002, the plaintiff was doing reasonably well and was ambulating well with her brace on. Dr. Theofilos hoped to get her out of the brace and into physical therapy and rehabilitation with back strengthening. On October 17, 2002, Dr. Theofilos noted that the plaintiff's incision was well healed and x-rays showed the fusion was progressing well with instrumentation and the bone well placed. The plaintiff reported continued low back pain without lower extremity radiculopathy. Dr. Theofilos instructed the plaintiff to continue with her back strengthening exercises. (R:92, 94-8, 107-9)

In a letter dated January 16, 2003, Dr. Theofilos opined that the plaintiff had suffered approximately a 10% impairment of the whole person due to her lumbar spine condition. He felt that she should be at a light-duty work status in the future, and that she would need episodic physical therapy three times per week for four to six weeks, and one to two sessions per year for the next three to five years. The plaintiff also would require pain and

4

anti-inflammatory medications as well as trigger point injections. (R:105-6)

At a follow-up office visit with Dr. Theofilos on January 23, 2003, the plaintiff reported that she was feeling slightly better and had undergone physical therapy with some improvement. Physical examination revealed that the plaintiff's motor strength was 5 and symmetrical; senses were intact and deep tendon reflexes were 1+ and symmetrical. Examination of the lumbar spine showed a well healed lumbar incision, negative Patrick's maneuver, negative spasm and mild limited range of motion. X-rays indicated that the plaintiff's fusion was progressing well. Dr. Theofilos recommended a bone stimulator to help the plaintiff's fusion progress because of her weight, and instructed her to continue physical therapy and rehab. (R:103-4)

In a letter dated February 17, 2003, the plaintiff's chiropractor, Dr. Mote, wrote that the plaintiff rated her cervical spine pain as 4 on a scale of 1 to 10, lumbar spine pain was 7. He opined that the plaintiff suffered from a partial permanent impairment of at least 10% of the body as a whole for a surgically treated disc lesion with residual radiculopathy and medically documented pain and rigidity. He recommended continued chiropractic care approximately one to two times per month, on a reduction of frequency basis, for one year if necessary during times of acute exacerbation. Dr. Mote had instructed the plaintiff to continue with the stretches and exercises provided for her,

5

continue to lose weight and apply moist heat compresses to the neck and lower back as needed. (R:122-23)

On May 16, 2003, the plaintiff returned to Dr. Theofilos. She reported that she experienced some low back pain and some neck discomfort primarily every morning. The plaintiff was wearing her bone stimulator, but had stopped physical therapy. X-rays revealed excellent progression of the fusion at L5-S1. Dr. Theofilos recommended an MRI scan of the plaintiff's cervical and lumbar spine. (R:211

An MRI was performed on May 23, 2003. It revealed that the plaintiff was status post posterior decompression and fusion at the L5-S1 level. The thecal sac as decompressed and there was no evidence of central stenosis or neural foraminal narrowing. The MRI also showed bulging annuli at the L3-4 and L4-5 levels, with no evidence of central canal stenosis or neural foraminal narrowing. (R:226-7)

On June 26, 2003, the plaintiff reported to Dr. Theofilos that she continued to experience neck pain and upper extremity radiculopathy. An examination of the plaintiff's lumbar spine showed increased pain with flexion and extension and mildly positive straight leg raise bilaterally, about 30 to 40 degrees. Dr. Theofilos noted that a review of the plaintiff's cervical spine MRI from May 2003 showed a central disc herniation at C5-6 with

6

cord compression. Dr. Theofilos recommended anterior cervical disk fusion at C5-6, and the plaintiff agreed.[1] (R:208-9)

An MRI scan of the plaintiff's cervical spine performed on February 18, 2004, showed status post anterior cervical fusion between C5 and C6, no disc herniations or central canal compromise and no clinically significant neural foraminal compromise. (R:234)

On May 19, 2004, the plaintiff presented to the emergency department at JFK Medical Center in Atlantis, Florida, complaining of an incident of chest pain, which had lasted for about twenty minutes. No abnormalities were found, and the plaintiff was released to her primary care physician, Dr. Nunez, for follow up. (R:262-3)

On July 20, 2004, Dr. Nunez completed a Medical Assessment of Ability to Do Work-Related Activities Form. Dr. Nunez stated that the plaintiff could lift a maximum of one to two pounds frequently (from 1/3 to 2/3 of an eight hour day), as the result of back and neck tenderness which limited her movements. Dr. Nunez also opined that standing, walking and sitting also were affected by the plaintiff's impairment, but he did not indicate how many hours per day the plaintiff could perform these functions. Dr. Nunez did not complete the portions of the form which dealt with postural limitations, physical functions and environmental

---

[1] The May 2003 cervical MRI scan report does not appear in this record, nor do any further reports from Dr. Theofilos. However, medical reports in the record indicate that the surgery on the plaintiff's cervical spine was performed prior to February 2004.

7

restrictions, and expressed no opinion on the level of work the plaintiff could perform. Dr. Nunez stated that the plaintiff needed to be evaluated by a neurosurgeon in order to complete the form. (R:282-86)

On November 22, 2004, Dr. Nunez prescribed nine physical therapy sessions, three times per week for three weeks. The plaintiff attended two sessions, after which she ceased physical therapy. (R:242, 248-51)

On April 17, 2005, the plaintiff received emergency room treatment for abdominal pain. She was diagnosed with a urinary tract infection. (R:278-79)

At the administrative hearing, the plaintiff testified that she had fusions performed on her lower back and cervical spine. She stated that she did not attend most of the physical therapy sessions because of pain. She used a cane to assist her. (R:293-4)

The plaintiff acknowledged that she did not work during the years 1989-91 and 1993-98. She earned $875 during 1992; $3,000 in 1999; $3100 in 2000, and $5,000 in 2001. The plaintiff explained that she was married from 1993 to 1997 and her husband took care of her during that time. She did not remember why she did so little work from 1997 to 2001. She did recall that she did housekeeping and also worked as a security guard, but only worked for a few months at a time. She had been receiving welfare benefits for eleven years and lived in Section 8 housing. (R:294-95, 303)

At the time of the hearing, the plaintiff lived with her three children and her mother. She completed the eighth grade, but never obtained a GED or received any vocational training. The plaintiff had a driver's license and drove approximately three miles per week. Her mother took care of the children, cleaned the house and helped the plaintiff get dressed. Prior to her mother moving in with her, the plaintiff's brother and sister took turns taking care of her. There had been some domestic violence problems with the plaintiff's boyfriend, but the plaintiff broke up with that boyfriend a year prior to the hearing. (R:295-97, 300, 306-8)

The plaintiff stated that her surgeries had not significantly relieved her pain. She was unable to lie on her back and had to rearrange her body every ten minutes. She took Percocet about three times per week for pain, as well as Soma as a muscle relaxant. She had not yet run out of prescriptions that had been issued in November 2004. The plaintiff acknowledged that she had a couple of personal injury lawsuits pending. (R:297-98, 300-03)

Jeanine Salek, a vocational expert, testified that based on the plaintiff's employment record, she had no past relevant work. (R:308)

### III. DECISION OF THE ALJ

The ALJ first found that the plaintiff had not engaged in any substantial gainful activity since her protective filing date of November 11, 2002. Next, the ALJ found that the plaintiff suffered from residuals of posterior lumbar interbody fusion of L5-S1 with pedicle screws, residuals of anterior cervical fusion of

9

C5-C6 and obesity, and that, in combination, these impairments were "severe." Giving the plaintiff the benefit of the doubt, the ALJ also found that the plaintiff suffered from depression and anxiety, but that these impairments were not "severe" for purposes of the disability determination. The plaintiff's "severe" impairments, taken singly or in combination, did not at any time since November 11, 2002, meet or equal the objective criteria of any of the impairments described in Appendix 1, Subpart P, Regulations No. 4. (R:13-14)

After summarizing the medical record, the ALJ found that the plaintiff retained the residual functional capacity to occasionally lift and/or carry ten pounds; stand and/or walk for two hours in an eight hour work day and sit (with normal breaks) for six hours or more during an eight hour work day. Since the plaintiff had no other physical limitations, she was able to perform sedentary work. However, based on the possibility that pain and intermittent low level anxiety/depression could prevent the plaintiff from executing complex or detailed tasks, the ALJ found that the plaintiff could do only simple, repetitive work which is consistent with the Social Security definition of unskilled work. (R:14-15)

The ALJ found that the plaintiff's subjective allegations of pain were less than fully credible. The ALJ noted that the plaintiff had no coherent explanation for her poor work record, had been on welfare for eleven years, was living in Section 8 housing and has two tort cases pending. Additionally, the ALJ pointed out

10

that the plaintiff had complained of severe pain, but had taken little medication, had not participated in physical therapy and still drove a car. Moreover, the plaintiff complained of depression, but had failed to seek any mental health treatment. Based on these factors, combined with the objective medical record, the ALJ found that the plaintiff's experienced pain, but not of the intensity she alleged. (R:15-16)

Based on the plaintiff's age, education, residual functional capacity and lack of past relevant work experience, the ALJ found that the plaintiff had not been disabled since November 11, 2002, and has been able to perform other work since that time. Therefore, the plaintiff was not entitled to benefits under the Social Security Act. (R:16-17)

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff seeks summary judgment on the ground that there was nothing in the record from which the ALJ could have based her finding that the plaintiff had the residual functional capacity to perform sedentary work.

The Commissioner argues that the ALJ's decision should be affirmed because it was supported by substantial evidence and the correct legal standards were applied.

## V. RECOMMENDATIONS OF LAW

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by

11

substantial evidence." Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983). The Court must review the record as a whole to determine if the decision is supported by substantial evidence. Bloodsworth, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards. No presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied. Richardson, supra.

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 CFR § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began. Second the claimant must provide evidence of a severe impairment. Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four. In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work. The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five. The ALJ must show that there is other gainful work in the national economy which the

claimant can perform. Once the ALJ identifies such work, the burden returns to the claimant to prove his or her inability to perform such work.

In the instant case, the plaintiff contends that there was nothing in the record on which the ALJ could have based her finding that the plaintiff retained the residual functional capacity to perform sedentary work. However, as the Commissioner points out, on January 16, 2003, Dr. Theofilos (the plaintiff's treating orthopedic surgeon) stated that the plaintiff could be released to light duty work. After considering the record as a whole, the ALJ found that the plaintiff could not perform light work, and concluded that she could perform only sedentary work.

This conclusion was not, as the plaintiff argues, inconsistent with the opinion of the plaintiff's primary care physician, Dr. Nunez. The only restriction placed on the plaintiff by Dr. Nunez was that she could not lift or carry more than one or two pounds frequently, an assessment which is not inconsistent with the ALJ's assessment that the plaintiff could not lift more than ten pounds occasionally.

Additionally, the ALJ was entitled to find that the plaintiff's subjective allegations of pain were less than fully credible. The ALJ must consider a claimant's subjective testimony regarding pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity

13

that can reasonably be expected to give rise to the alleged pain. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986); Landry v. Heckler, 734 F.2d 1551, 1553 (11th Cir. 1986). However, the ALJ may reject a claimant's testimony regarding pain as not credible, and that determination must be upheld if it is supported by substantial evidence. Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984).

The ALJ found that the plaintiff's testimony was not fully credible based on her refusal to follow her doctors' instructions to participate in physical therapy, her infrequent use of pain medication and her inability to explain why, prior to sustaining her injuries, she had not worked for several years, had not held any job for more than a few months and had not earned more than $5,000 in any single year. The ALJ noted that the plaintiff had been receiving welfare for eleven years, lived in Section 8 housing and had tort lawsuits pending. Considering the plaintiff's testimony in light of the entire record, which included Dr. Theofilos' assessment that the plaintiff was capable of light work, the ALJ was entitled to find that the plaintiff's pain was not of the intensity she alleged.

The ALJ's finding that the plaintiff retained the residual functional capacity to perform sedentary work was supported by substantial evidence in the record, and her decision denying SSI benefits should not be disturbed.

14

## VI. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the plaintiff's Motion for Summary Judgment (DE 15) be DENIED, and the Commissioner's Motion for Summary Judgment (DE 18) be GRANTED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 4th day of April, 2007.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Lilli Marder, Esq. (P)
AUSA David Mellinger (FTL)